## IN THE UNITED STATES DISTRICT COURT
## FOR THE MIDDLE DISTRICT OF NORTH CAROLINA

| | | |
|---|---|---|
| LARRY FRANKIE JOHNSON, | ) | |
| | ) | |
| Petitioner, | ) | |
| | ) | |
| v. | ) | 1:11CR359-2 |
| | ) | 1:13CV725 |
| UNITED STATES OF AMERICA, | ) | |
| | ) | |
| Respondent. | ) | |

### MEMORANDUM OPINION AND RECOMMENDATION
### OF UNITED STATES MAGISTRATE JUDGE

This case comes before the undersigned United States Magistrate Judge following an evidentiary hearing on the ineffective assistance of counsel due to failure-to-appeal claim that appears within Ground One of Petitioner's Motion under 28 U.S.C. § 2255 to Vacate, Set Aside, or Correct Sentence ("Section 2255 Motion") (Docket Entry 56).[1] For the reasons that follow, the Court should deny that claim.

### INTRODUCTION

This Court (per then-Chief United States District Judge James A. Beaty, Jr.) entered a Judgment against Petitioner imposing, inter alia, a prison term of 188 months, after his guilty plea to conspiracy to distribute 28 grams or more of cocaine base in violation of 21 U.S.C. §§ 846 and 841(b)(1)(B). (Docket Entry 52;

---

[1] Parenthetical citations refer to Petitioner's criminal case.

see also Docket Entry 1 (Indictment); Docket Entry 39 (Plea Agreement); Docket Entry dated Apr. 13, 2012 (documenting guilty plea); Docket Entry dated Sept. 5, 2012 (documenting sentencing); Docket Entry 63 (Plea Hrg. Tr.); Docket Entry 64 (Sent'g Hrg. Tr.).) Petitioner did not appeal. (See Docket Entry 56, ¶ 8; see also Docket Entries dated Sept. 5, 2012, to present.) He did, however, make various collateral filings in this Court, including the instant Section 2255 Motion (Docket Entry 56). The United States responded (Docket Entry 71) and, despite notice of his right to reply (Docket Entry 72), Petitioner filed none (see Docket Entries dated Apr. 25, 2014, to present).

By prior Memorandum Opinion, the undersigned Magistrate Judge recommended that the Court deny Petitioner's claims, except the claim within Ground One of his instant Section 2255 Motion, which alleges that his "counsel was ineffective for failing to notice a direct appeal, as instructed by [Petitioner] . . . ." (Docket Entry 56, ¶ 12(Ground One); see also id. at 12 (signing under penalty of perjury)). (See Docket Entry 73 at 18-19.) As to that failure-to-appeal claim, the undersigned Magistrate Judge recommended that the Court defer action, pending an evidentiary hearing. (See id. at 19.) The Court (per Judge Beaty) adopted the foregoing Recommendation (see Docket Entry 77) and a hearing on Petitioner's failure-to-appeal claim now has occurred (with Petitioner there represented by new appointed counsel) (see Docket Entry 78). Based

2

on the evidence presented at that hearing and a review of the entire record, the Court should deny Petitioner's failure-to-appeal claim.

## DISCUSSION

As noted in the preceding section, Petitioner's instant Section 2255 Motion alleges that his "counsel was ineffective for failing to notice a direct appeal, as instructed by [Petitioner] . . . ." (Docket Entry 56, ¶ 12(Ground One).) Petitioner later elaborated in a brief that "(after his sentencing hearing) [he] verbally requested, that, he in fact wanted to notice an appeal, underlying his career offender designation[.]" (Docket Entry 61 at 3.) In response, Petitioner's former counsel, Micah Huggins, declared under penalty of perjury that he "met with Petitioner about his limited appeal rights . . . and Petitioner personally informed counsel during that meeting that he did not want to appeal on any of these four grounds." (Docket Entry 71-1 at 4.)[2]

---

[2] In exchange for the United States not filing a notice of prior conviction under 21 U.S.C. § 851, Petitioner "expressly waive[d] the right to appeal the conviction and whatever sentence is imposed on any ground . . . excepting [his] right to appeal based upon grounds of (1) ineffective assistance of counsel, (2) prosecutorial misconduct not known to the defendant at the time of the defendant's guilty plea, (3) a sentence in excess of the statutory maximum, and (4) a sentence based on an unconstitutional factor, such as race, religion, national origin or gender." (Docket Entry 39, ¶ 5(d); see also Docket Entry 63 at 8, 11 (addressing appeal waiver at plea hearing).)

3

At the start of the evidentiary hearing, Petitioner (through his new appointed counsel) confirmed that Petitioner raised an appellate ineffective assistance claim based only on Mr. Huggins's failure to file a notice of appeal as instructed (not any failure by Mr. Huggins to consult with Petitioner about whether to file an appeal). (See Docket Entry 78 at 3-4.) Petitioner then took the stand. (See id. at 5.) On direct examination, in response to the question, "after the sentencing hearing, did you have a conversation with Mr. Huggins," Petitioner responded: "<u>Before I left</u>, to have an appeal." (Id. at 6 (emphasis added).)

At that point, Petitioner launched into a discussion about his guilty plea and his presentence report (see id.), after which his new appointed counsel re-directed Petitioner's attention "to the issue of whether [he] asked [Mr. Huggins] to appeal [and whether Petitioner] had a discussion with [Mr. Huggins] after [Petitioner] w[a]s sentenced" (id. at 7). Unlike with his above-quoted answer from the beginning of the evidentiary hearing, Petitioner did not make reference to any instruction to appeal supposedly given to Mr. Huggins immediately after the sentencing hearing (i.e., "[b]efore [he] left"); instead, Petitioner indicated that, some days later, he and Mr. Huggins talked "[o]n the phone, and [they] saw [each other] one time." (Id.) According to Petitioner, during the telephone conversation, he "asked [Mr. Huggins] to appeal, but [Mr. Huggins] said, on what grounds?" (Id.) Petitioner thereafter

4

testified that, within a month of his sentencing hearing, Mr. Huggins came to see Petitioner at a facility in Yanceyville, North Carolina, but they did not discuss an appeal. (Id.) Petitioner's new appointed counsel thereupon concluded his direct examination.

On cross-examination, Petitioner averred that, "on the day that [he] got sentenced," he "asked [Mr. Huggins] about an appeal that day." (Id. at 8 (emphasis added).) Petitioner then clarified that he said: "Are you going to appeal this? Because the time that I got ain't what he said the deal was, so I asked him about the appeal." (Id. (emphasis added).) Petitioner thereafter contradicted his above-described, direct examination testimony by stating that, "during the conversation that [he] had with [Mr. Huggins] in Yanceyville," Petitioner "asked [Mr. Huggins] about the appeal." (Id. (emphasis added); see also id. (placing Mr. Huggins's "[o]n what grounds" comment during personal meeting in Yanceyville, not during prior telephone conversation).)

Further, Petitioner repeated that he merely "asked" Mr. Huggins about an appeal; Petitioner did not testify that he instructed Mr. Huggins to appeal. (See id. at 9.) Moreover, Petitioner acknowledged that he had no answer for Mr. Huggins's question as to the grounds Petitioner might appeal. (See id.) Finally, Petitioner denied that Mr. Huggins "sa[id] anything to [Petitioner] about the fact that the appeal was limited to ineffective assistance of counsel or a sentence in excess of the

5

statutory maximum or a sentence based on an unconstitutional factor like race or the fact that you could appeal based on prosecutorial misconduct" and even went further, denying that he ever "heard" about any such restriction, including "when [he] pled guilty." (Id. at 10.)[3] Counsel for the United States then ceased his cross-examination and Petitioner's counsel declined to pursue re-direct examination or to present any other evidence. (See id. at 10-11.)

Next, the United States called Mr. Huggins, who testified that:

1) Petitioner's Plea Agreement included an appeal waiver that strictly limited his avenues of appeal, which provision was reviewed with Petitioner in open court at the time of his guilty plea (see id. at 12);

2) in the days after Petitioner's sentencing, Mr. Huggins visited Petitioner in person at a facility in Yanceyville to discuss "in detail" his limited appeal rights (id. at 13);

3) during that conversation, Mr. Huggins "specifically advised [Petitioner] that he probably would have his best chance of appealing on ineffective assistance of counsel, if he was particularly dissatisfied with [Mr. Huggins's] service" (id. at 14; see also id. at 15 ("I felt like that none of the other factors

---

[3] In fact, the record confirms that Mr. Huggins read the appeal waiver provision in open court in Petitioner's presence (see Docket Entry 63 at 8) and that Petitioner acknowledged his understanding of the provision (see id. at 11).

6

really applied to his case; and I felt that if he was not satisfied with the service that I provided, then maybe he could file upon those grounds, being that all the other grounds I didn't think really applied."));

4) Petitioner, however, responded "I don't want to do that" (id. at 14; see also id. (attributing to Petitioner the statement: "I don't want to say that you didn't represent me effectively, so I don't want to file an appeal based on that."));

5) subsequently, Petitioner "sen[t Mr. Huggins] some cases in the mail about possibly appealing on this or that, which were unrelated to [their] discussion as far as what he could appeal upon, and that's when [they] had the phone conversation when [Mr. Huggins] told [Petitioner] those grounds did not apply" (id.; see also id. at 17 ("It was really state cases that had nothing to do with the federal law, people who had filed an appeal in state court. So it was really -- that's why I said it was unrelated to his federal case.")); and

6) Petitioner never directed Mr. Huggins to file an appeal (see id. at 14-15).

"Once [a federal criminal defendant] unequivocally instruct[s] his attorney to file a timely notice of appeal, his attorney [i]s under an obligation to do so." United States v. Poindexter, 492 F.3d 263, 269 (4th Cir. 2007); see also Roe v. Flores-Ortega, 528 U.S. 470, 477 (2000) ("[A] lawyer who disregards specific

7

instructions from the defendant to file a notice of appeal acts in a manner that is professionally unreasonable."); id. at 485 ("[A] defendant, by instructing counsel to perfect an appeal, objectively indicate[s] his intent to appeal and [i]s entitled to a new appeal without any further showing."). As described above, Petitioner's testimony at the evidentiary hearing did not establish that he "unequivocally instruct[ed] his attorney to file a timely notice of appeal," Poindexter, 492 F.3d at 269; to the contrary, Petitioner gave varying accounts that, at most, indicated he asked questions about an appeal. Conversely (again, as the preceding discussion documents), Mr. Huggins testified that Petitioner never directed Mr. Huggins to file an appeal. To the extent material conflicts exist between the testimony of Petitioner and Mr. Huggins, the Court should credit the latter over the former.

First, the record (discussed above) reflects that, at the evidentiary hearing, Mr. Huggins testified consistently with the sworn statement he submitted before the hearing. By contrast, the quotations from Petitioner's pre-hearing filings set out in the preceding discussion present a different account from the one he offered at the hearing; moreover, Petitioner's hearing testimony itself lacked internal consistency and conflicted with other unimpeachable record material. Such circumstances "severely, if not completely, erode[]" his credibility. Diaz v. United States,

8

Nos. 7:09CR100D, 7:11CV43D, 2014 WL 7384974, at *7 (E.D.N.C. Dec. 29, 2014) (unpublished).

Further, "there is no evidence that [Petitioner's former attorney] had any motive to refuse any request by [Petitioner] to file an appeal . . . ." Id. at *6. Petitioner, however, "had a strong incentive to lie . . . about his purported request for an appeal. That claim represents perhaps the only remaining avenue open to [him] to escape service of [his] prison term . . . ." Id. at *8. Finally, Mr. Huggins testified in a straight-forward manner about his interactions with Petitioner and offered descriptions consistent with what one reasonably would expect to have occurred given the relevant circumstances. Such considerations support the crediting of Mr. Huggins's testimony. See id. at *5.

## CONCLUSION

Petitioner has failed to establish entitlement to relief on his ineffective assistance of counsel, failure-to-appeal claim.

**IT IS THEREFORE RECOMMENDED** that the ineffective assistance of counsel, failure-to-appeal claim that appears within Ground One of Petitioner's instant Section 2255 Motion (Docket Entry 56) be denied without issuance of a certificate of appealability based on the following findings of fact and/or conclusions of law:

1) within Ground One of the instant Section 2255 Motion, Petitioner asserts a claim for ineffective assistance of counsel on appeal only for failure of his then-counsel to file a timely notice

9

of appeal when instructed to do so and does not state a claim for ineffective assistance of counsel for failure to consult about whether to pursue an appeal; and

2) Petitioner did <u>not</u> unequivocally instruct his former counsel to file a timely notice of appeal and thus Petitioner's failure-to-appeal, ineffective assistance of counsel claim lacks merit.

<pre>                                    /s/ L. Patrick Auld
                                      **L. Patrick Auld**
                              **United States Magistrate Judge**
September 1, 2015</pre>